## Edwards et al. v. Wilson et al.

May 20, 1941.

B. J. Bethurum, J. C. Bird and Charles N. Hobson for appellants.

R. C. Tartar, G. W. Stephens and G. W. Hatfield for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming in part and reversing in part.

This litigation involves a tract of land containing some 50 acres, approximately 40 acres of which are in Pulaski county and the remaining 10 acres in McCreary county. The principal improvements on the property are located in McCreary county, and a beer parlor has been operated on the property in that county. Pulaski county is dry. Obviously, the use to which the property has been put and its strategic location have enhanced its value.

The action was instituted by the appellees herein, Lucy Wilson and her husband, against the appellants, J. C. (Caradine) Edwards and his wife, and a sister-in-law of Edwards, Mrs. Rushia Vaught, and her husband. The Wilsons set up their claim to the land and prayed that a deed which had been executed to Edwards and one which he had executed to Mrs. Vaught be cancelled. The defendants filed an answer and counterclaim in which it was set up that Mrs. Wilson was a tenant under

Edwards and that Edwards had purchased the land and conveyed it to Mrs. Vaught. The relief sought was that Mrs. Vaught be adjudged the owner of the property and that she be given possession thereof. The ruling of the trial judge was that both the plaintiffs and defendants were guilty of fraud in the execution and delivery of certain deeds, which will be discussed hereinafter, and that fraud was manifest throughout all the transactions between the parties. The Wilsons' petition was dismissed and the answer and counterclaim was dismissed. Edwards and Mrs. Vaught have appealed, but it is pointed out in their brief that Mrs. Vaught is the real party in interest, since Edwards makes no claim to the land, contending, of course, that he has conveyed it to his sister-in-law. The Wilsons have filed a cross appeal.

We heartily concur in the conclusion of the trial judge that fraud is manifest throughout the transactions involving both the appellants and the appellees; but, since the title to land is involved, it is necessary for us to determine where the title now rests. Our task would be a more pleasant one had the parties come into equity with clean hands.

Prior to May, 1939, Fogg Edwards and Polly Helton owned the land, and Edwards operated a beer parlor on it. His license was revoked. On May 6, 1939, the owners leased the property to Mrs. Wilson. She, representing that the property belonged to her, obtained a beer license and began the operation of the establishment. There is a notation on Mrs. Wilson's lease that it was transferred to Caradine Edwards on May 27, 1939. Caradine was interested in purchasing the property and so were the Wilsons. An auction sale was held and Caradine was a bidder. The sale fell through, apparently because there was some question as to whether or not the prospective purchaser could get a beer license. It seems that Caradine and the Wilsons were in contact with the real estate agent who was attempting to sell the property after the attempted auction. On May 27th, the owners of the property, Caradine and the real estate agent were together for a good part of the day in Somerset. After considerable dickering as to the price of the property Caradine finally agreed to pay $2,000 for it. He assumed obligations on the property amounting to approximately $1,000 and paid the balance to the owners. The fixtures were not involved in that transfer.

A deed was executed by Fogg Edwards and Polly Helton to Caradine cn May 27th and it was lodged for record in the clerk's office on that day and was recorded June 13, 1939. On the same day that this deed was executed a second deed was executed by the original owners at the request of Caradine to Lucy Wilson. This deed was turned over to Mrs. Wilson by Caradine and she had it lodged for record in McCreary county June 16, 1939. There is testimony to the effect that the reason Caradine had the grantors execute a second deed to Mrs. Wilson (against the advice of the real estate agent) was that the county judge of McCreary county (local alcohol beverage administrator) had manifested a reluctance to approve a beer license for an Edwards, whereas Mrs. Wilson would be able to get one. It appears, however, that she already had a beer license and was operating under it.

It is necessary at this time that we discuss the basis of the claim of the Wilsons to the land. They, of course, claim under the deed from Fogg Edwards and Polly Helton. Their testimony is to the effect that Caradine Edwards was acting for them on May 27th in purchasing the property. Mrs. Wilson testified that she gave him $900 cash when he delivered the deed. There was other testimony in support of this statement. Mrs. Wilson does not give a very good story as to where she got the $900. Checks which she had given for rent had been returned unpaid. She testified that she had $400 which she did not keep in a bank and that she borrowed $500 additional. The party from whom the money was said to have been borrowed did not testify. Caradine testified that Mrs. Wilson was renting from him, thereby accounting for her possession of the property after the execution of the deeds on May 27th.

It is significant that the Wilsons did not attempt to have their deed recorded in Pulaski county as provided in Section 495 of the Statutes. This section reads in part as follows:

> "All deeds and mortgages and other instruments of writing which are required by law to be recorded to be effectual against purchasers without notice, or creditors, shall be recorded in the clerk's office of the court of the county in which the property conveyed, or the greater part thereof, shall be."

The undisputed testimony of a surveyor, who had surveyed the property, is that 40 acres of the land is in Pulaski county and 10 acres in McCreary.

The proof does not warrant the conclusion that Caradine was acting as Mrs. Wilson's agent at the time the original owners executed the deed to him on May 27th. We think Caradine became the purchaser of the property at that time and that the title passed to him. Therefore, the original owners had nothing to convey to Mrs. Wilson in the second deed. The fact that Caradine gave Mrs. Wilson the second deed does not alter the situation, since we are of the opinion that the record does not show that there was any intention on his part to pass the title to her. Smith v. Feltner, 256 Ky. 325, 76 S. W. (2d) 25.

Having reached the conclusion that the title to the property was in Caradine as against Mrs. Wilson, and that she took nothing under the second deed executed by the original owners, it becomes unnecessary for us to discuss the question as to whether or not Mrs. Vaught, a sister-in-law of Caradine, was an innocent purchaser. Caradine conveyed to her whatever interest he had in the property and he is raising no question about that. While we do not think that Mrs. Vaught has come into equity with clean hands, it does not necessarily follow that her claim to the property is inferior to that of Mrs. Wilson, because, as we have indicated, Mrs. Wilson took nothing under the second deed from the original owners and Mrs. Vaught took whatever interest Caradine held. Even if Mrs. Wilson had had her deed recorded in Pulaski county, we think the situation would be the same, because the recording of a bogus deed would not affect the title to the property.

Wherefore, the judgment is reversed on the appeal and affirmed on the cross appeal, with directions that it be set aside and a judgment entered in conformity with this opinion.